## AFFIDAVIT OF TASK FORCE OFFICER MICHAEL C. ALVARADO

I, Michael Alvarado, being duly sworn, depose and state as follows:

## INTRODUCTION.

1. I am a Lieutenant with the Massachusetts Department of Correction ("MA DOC"). I have served with the MA DOC from 2006 to present. Since 2012, I have served as an investigator in the MA DOC's Office of Investigative Services. In addition, since September 2015, I am assigned as a Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI"), Boston Division's North Shore Gang Task Force ("NSGTF"). As a TFO, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

2. I have received training and experience in a variety of investigative methods to include interview and interrogation, arrest procedures and search and seizure. Since my assignment to the NSGTF as a TFO, I have received additional training and experience in interviewing and interrogation, arrest procedures, search and seizures, gangs, narcotics, search warrant applications, and various other investigative techniques and methods.

3. I have participated in numerous investigations focusing on controlled substances, trafficking, gangs, and illegal firearms. I have conducted covert surveillance of suspected drug traffickers, interviewed numerous individuals involved in gangs and drug trafficking, participated in several Title III wiretap investigations as a monitor and member of surveillance teams, participated in the execution of numerous state and federal search and arrest warrants involving drug traffickers and violent offenders, and I have participated in the seizure of numerous firearms and controlled dangerous substances.

4. Over the past fifteen years, I have been involved in numerous state and federal narcotics and gang investigations. As a result of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, the organization of drug conspiracies, traditional gang methodologies and structures, as well as illegal firearms sales.

5. I have participated in various aspects of firearm-related investigations. For example, I have participated in firearm investigations utilizing confidential informants. I have assisted in preparing affidavits for federal court in support of applications for criminal complaints, search warrants, tracking warrants and Title III wire intercepts. I have also conducted and coordinated electronic and physical surveillance of individuals involved in violations of federal firearms laws.

6. I am currently involved in an ongoing investigation into felon in possession of ammunition, in violation of Title 18, United States Code, Section 922(g)(1) and dealing firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A)(the "TARGET OFFENSES") by Zachary ZELLA (born 1993) and Mickie SIMMONS (born 1991).

7. This affidavit is being submitted in support of an application for a warrant to search a mobile phone, more specifically, a black iPhone in a clear/red case seized from Mickie SIMMONS incident to his arrest by law enforcement on Gay Road in Brookfield, Massachusetts on May 26, 2022 (hereinafter, the "TARGET PHONE"). The TARGET PHONE is in the possession of law enforcement investigators, as described in Attachment A. There is probable cause to believe that the TARGET PHONE contains evidence, fruits, and instrumentalities of the TARGET OFFENSES, as described in Attachment B.

8.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement personnel and witnesses.  This affidavit is intended for the limited purpose of setting forth sufficient probable cause for the requested complaints, arrest warrants and search warrants and does not set forth all my knowledge about this matter. In addition, where amounts are set forth in this affidavit, they are set forth as approximations.  Similarly, dates and times are approximations, and should be read as on about, in about, or at about the date or time provided.

## STATUTORY AUTHORITY

9.      As noted above, this investigation concerns alleged violations of the following:

(a)     Title 18, United States Code, Section 922(g)(1) prohibits any individual who has been convicted of a crime punishable by imprisonment for a term exceeding one year to possess ammunition; and

(b)     Title 18, United States Code, Section 922(a)(1)(A) makes it a federal offense for any individual who is not a licensed dealer within the meaning of Title 18, United States Code, Chapter 44, to engage in the business of dealing in firearms.

## PROBABLE CAUSE

10.     On March 7, 2022, ZELLA and SIMMONS (both convicted felons who served more than a year in prison making them each aware of their status as felons) sold an FBI Confidential Human Source (CHS-1[1]) one (1) Polymer80 Inc., Model PF940V2, 9mm pistol with

---

[1] Confidential Human Source 1 ("CHS-1") began cooperating with law enforcement in 2021.  The information provided by CHS-1 has been found to be reliable and has been corroborated by controlled firearms purchases from ZELLA and SIMMONS.  CHS-1 has received financial compensation in return for cooperation.  CHS-1 has convictions for assault on a family / household member (2017), resisting arrest (2017), bomb hoax (2017), assault and battery dangerous weapon (2015), assault (2015), larceny (2014), intimidation (2014), assault and battery (2014), threatening (2014), resisting arrest (2014), assault and battery police office (2014), vandalism (2014), disorderly conduct (2012), carrying a dangerous weapon (2012), assault and battery dangerous weapon (2011), larceny (2010), assault and battery/intimidation (2010), disorderly conduct (2010), trespassing (2010), as well as juvenile convictions.

one (1) magazine, which was later determined to be a Privately Made Firearm ("PMF"), also known as a "ghost gun," meaning a firearm that has been manufactured by an individual and not by a firearms manufacturing company. ZELLA also provided CHS-1 with thirty-seven (37) rounds of 9mm ammunition.

11. On April 12, 2022, CHS-1 purchased two (2) Polymor80 Inc. 9mm pistols from SIMMONS and ZELLA: one marked Model PF9405C, 9mm pistol with one magazine; and the other marked Model PF940V2, 9mm pistol with one magazine. These two pistols were determined to be PMFs. SIMMONS and ZELLA also provided 15 rounds of 9mm ammunition.

12. On May 4, 2022, CHS-1 purchased one (1) Polymer80 Inc., Model PF940V2, 9mm pistol with three (3) magazines and three (3) rounds of 9mm ammunition from ZELLA. This pistol also contained a Gamo laser sight. This pistol was determined to be a PMF.

13. On May 25, 2022, this Court authorized an arrest warrant on a criminal complaint for Mickie SIMMONS and a search warrant for his residence located at 42 Gay Road, Brookfield, Massachusetts. *See* 22-mj-4212-DHH; 22-mj-4214-DHH.[2] SIMMONS's cellular device(s) were among the items authorized to be seized from his residence.

14. On May 26, 2022, at approximately 6:00 a.m., agents executed the search warrant at 42 Gay Road, Brookfield, Massachusetts. While agents were executing the search warrant, a blue Chevrolet Camaro approached the residence on Gay Road. The vehicle came to a stop in front of a marked police cruiser with its emergency lights activated blocking the road.

---

[2] On the same day, this Court authorized an arrest warrant on a criminal complaint for Zachary ZELLA and a search warrant for his residence. 22-mj-4211-DHH; 22-mj-4213-DHH. A common affidavit supported all criminal complaints and search warrants. The affidavit is submitted herewith and incorporated herein as Exhibit 1 (with the exception of the last sentence of paragraph 32, as discussed *infra*).

15. A male exited the driver's seat of the vehicle and began walking on Gay Road toward the residence. Law enforcement officers recognized this individual to be Mickie SIMMONS. Officers stopped SIMMONS on Gay Road before he reached the property at 42 Gay Road, handcuffed SIMMONS, and took him into custody without incident.

16. During the search of his person incident to his arrest, officers seized the TARGET PHONE. The TARGET PHONE was transported to FBI Boston headquarters where it was entered as evidence.

17. Though the search warrant for SIMMONS' residence authorized law enforcement to seize and to search electronic items such cell phones, the TARGET PHONE was seized incident to SIMMONS' arrest that occurred on the road in front of his residence. Thus, based on these circumstances, I submit this affidavit in support of this separate search warrant for the TARGET PHONE. While the investigators might already have all necessary authority to examine the TARGET PHONE, I seek this additional warrant out of an abundance of caution to be certain that its search complies with the Fourth Amendment and other applicable laws.

18. Additionally, it has come to my attention within the last week that there was an error in the previous affidavit at paragraph 32. *See* Ex 1, ¶ 32.

19. I raise this here both to disclose the error to the Court and because the earlier affidavit provided probable cause for the search warrants and criminal complaints issued thus far in this investigation, and, by my incorporating the information included in that affidavit by reference hereto, would apply to the instant application. To be clear, while a regrettable error, I respectfully submit that there remains ample probable cause to justify SIMMONS' arrest, the search of his residence, and the subsequent search of the TARGET PHONE.

20.     Specifically, paragraph 32 of Exhibit 1 provides as follows:

> The NSGTF Intelligence Analyst previously subpoenaed ZELLA's telephone number for call detail records for the period September 1, 2021, through November 21, 2021. A frequency report was generated for this period to identify any contact in ZELLA's call detail record that may reside on Gay Road, Brookfield, Massachusetts. The NSGTF Intelligence Analyst identified telephone number 774-321-4208 through open-source databases as belonging to Mickie SIMMONS (born 1991), residing at TARGET PREMISES TWO. RMV records indicate that SIMMONS holds a Massachusetts Driver's License with the address of the TARGET PREMISES TWO listed as his residential address. A vehicle query of the RMV system also revealed that SIMMONS has an active Massachusetts Vehicle Registration connected to this address as well. A red Chevrolet Camaro bearing MA Reg: 1SXW53 is registered to SIMMONS at TARGET PREMISES TWO. A subpoena was also submitted for telephone number 774-321-4208 to include subscriber and call detail records. <u>The subscriber records for 774-321-4208 showed Mickie SIMMONS, residing at TARGET PREMISES TWO.</u>[5]
>
> [5] TARGET PREMISES TWO is owned by Robert Angel. While Angel and SIMMONS are visible together in photographs on various social medial [*sic.*] platforms, their relationship to one another is unknown at this time.

Ex. 1, ¶ 32 (underline supplied). The error is contained in the underlined sentence. The subscriber records for 774-321-4208 return to TARGET PREMISES TWO (42 Gay Road, Brookfield, Massachusetts). However, the listed subscriber is listed as "Dylan Jackson," not Mickie SIMMONS.

21.     Additional investigative steps have not revealed the existence of anyone named "Dylan Jackson" now or ever residing at TARGET PREMISES TWO. Specifically, no open-source records reveal a person named "Dylan Jackson" now or ever residing at TARGET PREMISES TWO. U.S. Postal records do not reveal anyone named "Dylan Jackson" now or ever residing at TARGET PREMISES TWO.[3] The subscriber records list "Dylan Jackson" at

---

[3] Of note, on July 29, 2022, Jessica Jackson filed a change of address moving from TARGET PREMISES TWO to an address in Sturbridge, Massachusetts. Jessica Jackson was present at TARGET PREMISES

160 Mechanic Street, 3R, Southbridge, Massachusetts prior to TARGET PREMISES TWO. While open-source records do not reveal "Dylan Jackson" now or ever at either address, the same open-source records place Mickie SIMMONS at both addresses, the name listed 774-321-4208 subscriber records notwithstanding.[4]

22. As noted in the earlier portion of paragraph 32, open-source records do show Mickie SIMMONS associated with 774-321-4208 and residing at TARGET PREMISES TWO. In addition, multiple other investigative results placed SIMMONS residing at TARGET PREMISES TWO, to include RMV records, such as his driver's license and vehicle registration.

23. As discussed above, the TARGET PHONE is currently being stored by the FBI as described in Attachment A. From my training and experience and the training and experience of law enforcement personnel who routinely handle this equipment, I understand that it has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when it first came into the investigators' possession.

24. From my training, experience, and information provided to me by other agents, I am aware that individuals frequently use cellular phone to carry out, communicate about, and store records regarding their daily activities. These tasks are frequently accomplished through sending and receiving e-mail, instant messages, and other forms of phone or internet based

---

TWO on May 26, 2022, when agents executed the search warrant. Upon information and belief, Jessica Jackson is/was SIMMONS' girlfriend.

[4] The billing address information from the subpoena shows the account for 774-321-4208 was activated on March 6, 2019, in the name "Dylan Jackson" and was attributed to 160 Mechanic Street Apt. 3R, Southbridge, Massachusetts. Open-source records indicate SIMMONS lived there at the time. According to the provider records, on November 14, 2020, there was an address change on this account and the updated account billing address changed to TARGET PREMISES TWO. It should be noted that SIMMONS was attributed to this address during this time period according to open-source queries.

messages; scheduling activities; keeping a calendar of activities; arranging travel; purchasing items; searching for information including information regarding travel and activities; arranging for travel, accessing personal accounts including banking information; paying for items; and creating and storing images and videos of their movements and activities.

25. Based on my training, experience, and information provided by other law enforcement officers, I know that many smartphones (which are included in Attachment B's definition of "hardware") can now function essentially as small computers. Smartphones such as the TARGET TELEPHONE have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages and e-mails, and storing a vast range and amount of electronic data. Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

26. From my training, experience, and information provided to me by other agents, I am aware that individuals commonly store records of the type described in Attachment B in mobile phones, computer hardware, computer software, and storage media. I know that data can often be recovered months or even years after it has been written, downloaded, saved, deleted, or viewed locally or over the Internet. This is true because:

> a. Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost. Furthermore, when users replace their electronic equipment, they can easily transfer the data from their old device to a new one.

> b. Even after files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time. In addition, the device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, electronic storage media often contains electronic evidence of how the device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task.

d. Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

## CONCLUSION

Based on the information described above and contained in Exhibit 1, which is specifically incorporated herein (with the exception of the final sentence of paragraph 32), there is probable cause to believe that SIMMONS has committed the TARGET OFFENSES. Based on the information described above, there is also probable cause to believe that evidence, fruits, and instrumentalities of these crimes, as described in <u>Attachment B</u>, are contained within the TARGET PHONE described in <u>Attachment A</u>.

I declare that the foregoing is true and correct.

Michael C. Alvarado
FBI TFO

Time and Date:   3:04 p.m.   **Sep 30, 2022**

Notice is hereby provided that, pursuant to Federal Rule of Criminal Procedure 4.1, the affiant was sworn by telephone on the date and time indicated above and on the search warrant issued by the Court.

HONORABLE DAVID H. HENNESSY
United States Magistrate Judge